IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL JOSEPH FINN, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| | ) Case No. |
| CATERPILLAR, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES Plaintiff, MICHAEL JOSEPH FINN (hereinafter "Plaintiff" and/ or "FINN"), by and through his undersigned counsel of record, and complains against CATERPILLAR, INC. (hereinafter "CATERPILLAR"), as follows:

### Introduction

1. This is an important case to thousands of retirees who relied on Defendant Caterpillar's promise to pay lifetime retirement healthcare benefits and who may soon be left without any healthcare benefits during the most critical and vulnerable period of their lives, after the age of sixty (60) years, when individuals are statistically most likely to need medical care and least likely to be healthy enough or able to find employment sufficient to supplement their income and pay for additional healthcare coverage.

2. Plaintiff FINN and the Class provided Defendant Caterpillar with years of dedicated service in exchange for Caterpillar's promise that they would receive a pension and lifetime retirement healthcare benefits.

3. Plaintiff brings this action, on behalf of himself and all others similarly situated, to protect important rights to retirement healthcare benefits for himself and other similarly situated

retiree class members. Plaintiff, and other similarly situated Caterpillar retirees, earned these retirement healthcare benefits over decades of service as employees of Caterpillar.

4. Plaintiff's and the class members' retiree healthcare benefits were created through collective bargaining between Caterpillar, Inc. and the International Union, United Automobile, Aerospace and Agricultural Workers of America ("UAW"), which represented Plaintiff and the class members while they were employed. Defendant Caterpillar is bound by a series of collective bargaining agreements negotiated with the UAW under the terms of which Caterpillar is obligated to provide Plaintiff and class members with lifetime cost-free retiree healthcare benefits. Despite these agreements, Defendant Caterpillar has been charging and will continue to charge Plaintiff and the class members for a portion of retiree medical benefits.

5. Because Plaintiff's and the class members' retiree healthcare benefits were the result of bargaining between a labor organization and Caterpillar, Defendant's conduct is actionable in this Court under Section 301 of the Labor Management Relations Act ("LMRA"). 29 U.S.C. § 185 (a). Defendant Caterpillar's conduct also violates the rights of Plaintiff and the class under employee benefit plans, and is therefore actionable in this Court under Section 502(a)(1)(B) and (a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1132 (a)(1)(B) and (a)(3).

## Jurisdiction, Venue and Parties

6. This Court has jurisdiction, and venue lies in this Court, pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a), and Sections 502(e) and (f) of ERISA, 29 U.S.C. § 1331.

7. Plaintiff FINN resides at 244 South Westlawn Avenue Aurora, Illinois 60506. In February 1974, Plaintiff FINN began working for Caterpillar. After a career spanning

approximately 22 years, he retired in February 1996. During his career, Plaintiff FINN earned rights to continue to receive retirement healthcare benefits at no cost to him throughout his retirement.

8. Defendant Caterpillar is a Delaware corporation with its principal offices in Peoria, Illinois. It is also a "sponsor," "fiduciary" and "plan administrator" of an "employee benefit plan" providing retiree medical benefits, as those terms are used in ERISA and/or in the LMRA. Defendant Caterpillar is qualified to do business and is doing business in the State of Tennessee and can be found in this District. Its wholly owned subsidiary and financial arm, Caterpillar Financial, Inc., is headquartered in the Middle District of Tennessee.

## FACTUAL ALLEGATIONS

9. The UAW is a labor organization as defined in § 101(5) of the National Labor Relations Act, 29 U.S.C. §. Prior to Plaintiff's retirement, the UAW represented them and the members of the class through collective bargaining agreements with Defendant Caterpillar.

10. For many years, Plaintiff and the class members worked for Caterpillar under various collective bargaining agreements negotiated on their behalf by the UAW. During these years, the retiree healthcare benefits of Plaintiff and other similarly situated class members were described and provided for through successive collectively bargained labor agreements.

11. Defendant Caterpillar, Inc. is bound by the collectively bargained-for labor agreements negotiated with the UAW, under the terms of which Caterpillar is obligated to provide healthcare benefits at no cost during retirement to Plaintiff and the Class members.

12. Plaintiff Finn commenced working for Defendant Caterpillar in 1974 and retired in February 1996. Plaintiff Finn was eligible to retire before January 1, 1992. Plaintiff retired before March, 1998, when a new collective bargaining agreement was ratified.

in this paragraph 5.15 will be provided after his retirement from active service for a retired Employee if he has at least 5 years of credited service under the Non-Contributory Pension Plan or would be eligible for such immediate commencement of a monthly pension under the Non-Contributory Pension Plan or would be eligible for such immediate commencement but for his election to defer commencement of his pension. Coverage shall take effect on his retirement date...

...Dependents' Coverage shall be in effect accordance with this paragraph 5.15 while Personal Coverage is in effect with respect to (a) all Dependents of a retired Employee who were covered hereunder on the day preceding his retirement and (b) any person who becomes a Dependent after the retirement of a retired Employee if such retired Employee either was covered for Dependents' Coverage prior to retirement or had no Dependents prior to retirement. and such Dependents' Coverage will be continued following the death of a retired Employee for the remainder of his surviving spouse's life without cost."

15. Over the years, Caterpillar's Summary Plan Descriptions also contained similar representations to Plaintiff and class members that retiree medical coverage would be provided at no cost throughout retirement for them and for the balance of their spouse's life if the spouse survived them. The 1970 Summary Plan Description states:

"Medical Benefits After Retirement

If you retire and are eligible for the immediate receipt of a pension under the Non-Contributory Pension Plan, you will be eligible for the Retired Medical Benefit Plan, continued at no cost."

The 1970 Summary Plan Description also contained the following clause on coverage for survivors:

"Survivors Coverage

For the surviving spouse of a retired employee, coverage will be continued for his or her lifetime at no cost."

16. The 1986 Summary Plan Description contains similar language to the 1970 Summary Plan Description concerning retiree medical benefits:

"Medical Benefits After Retirement

> If you retire and are eligible for the immediate receipt of a pension (with at least 5 years of credited service) under the Non-Contributory Pension Plan, you will be eligible for the Retired Medical Benefit Plan, continued at no cost. The Plan will not duplicate benefits under Medicare. A leaflet describing the Retired Medical Benefit Plan is available at the plant Employee Benefits Office."

Under the section entitled "Conversion Privilege," the 1986 Summary Plan Description provides:

> "If an active employee dies when eligible to retiree or if a retired employee dies, the surviving spouse will have coverage continued for his or her lifetime at no cost." (*Id.*)

17. Plaintiff accepted Caterpillar's offer for lifetime no-cost healthcare coverage by performing work for Caterpillar under the labor agreements and Summary Plan Descriptions. Plaintiff, and all class members or their deceased spouses, provided the requisite service to vest in the benefit by working for Caterpillar and becoming eligible for the immediate commencement of a monthly pension.

18. Once Plaintiff, and the Class, began performance under Caterpillar's offer of retiree medical benefits at no cost, Caterpillar could no longer revoke the offer.

19. The 1988 labor agreement between Caterpillar and the UAW expired for most employees on October 1991. A new labor agreement was not ratified until March, 1998. Sometime during 1992, Caterpillar announced its unilateral decision to cap retiree medical costs.

20. Caterpillar stated that beginning January 1, 2000 and thereafter, it would pay no more for retiree healthcare coverage than the amount it had paid in 1999. According to the 1992 announcement, if the healthcare coverage costs in 2000 exceeded the 1999 amount, all persons who retired on or after January 1, 1992 retired would be assessed a monthly premium to make up the shortfall. Only those employees who retired on or after January 1, 1992 would be subject to the cap and the assessment. Plaintiff, and the Class, all retired after January 1, 1992.

21. Caterpillar's conduct demonstrates that the rights to the lifetime medical benefits did not end with the expiration of the 1988 labor agreement on October 1, 1991. Caterpillar continues to provide retiree medical benefits at no cost to former employees and their spouses who were eligible for immediate commencement of a monthly pension and retired before January 1, 1992.

22. In 1998, Caterpillar and the UAW agreed to create a Voluntary Employee Benefits Associations Trust ("VEBA" Trust Fund) to temporarily cover the retiree healthcare premium costs above the cap Caterpillar had previously announced until the Trust was exhausted. The VEBA Trust Fund covered the retiree healthcare assessments until October 1, 2004, when it was exhausted.

23. Effective October 1, 2004, Caterpillar began charging Plaintiff and the Class a monthly retiree healthcare premium deducted from their pension payments. The initial monthly premium costs ranged from $134.44 to $280.88, depending on family status (single, married, family, on Medicare or not).

24. Plaintiff FINN was mailed a schedule of monthly premium payments that required him to pay as follows for medical coverage for himself and his wife:

| | |
|---|---|
| 2005 Monthly Premium | $121 |
| 2006 Monthly Premium | $170 |
| 2007 Monthly Premium | $212 |

25. The monthly premium charged to FINN has increased by approximately seventy-five percent (75%) from 2005 through 2007.

26. Plaintiff FINN receives a fixed pension in the amount of four hundred fifty one dollars and fifty-seven cents ($451.57) per month. The amount of Plaintiff FINN's pension is fixed for life and will not increase.

27. In the year 2005, Plaintiff FINN paid approximately twenty-seven percent (27%) of his pension to cover the costs of retirement healthcare benefits for himself and his spouse.

28. In the year 2006, Plaintiff FINN is paying more than thirty-eight percent (38%) of his pension to cover the costs of retirement healthcare benefits for himself and his spouse. Plaintiff FINN is paying more than thirty-eight percent (38%) of his pension to cover the costs of retirement healthcare benefits for himself and his spouse in 2006, because in 2006 Defendant Caterpillar began charging Plaintiff FINN and the Class additional amounts for deductibles and co-insurance.

29. In the year 2007, Plaintiff FINN will be paying more than forty-seven percent (47%) of his pension to cover the costs of retirement healthcare benefits for himself and his spouse. Plaintiff FINN will pay more than forty-seven percent (47%) of his pension to cover the costs of retirement healthcare benefits for himself and his spouse in 2007, because in 2007 Defendant Caterpillar will charge Plaintiff FINN and the Class additional amounts for deductibles and co-insurance.

30. If the current rate of premium increases continues, Plaintiff FINN's pension will be insufficient to cover the costs of retirement healthcare benefits in less than five (5) years.

31. In fact, if premiums continue to increase at the current rates, Plaintiff FINN will be forced to contribute his entire pension, plus pay additional sums of money if he wishes to receive any retirement healthcare benefits.

32. The direct and proximate result of Defendant Caterpillar's breach of its promise to pay Plaintiff FINN and the Class's retirement healthcare benefits is that Plaintiff and the retiree Class may be left without any pension and also be required to pay additional sums of money to obtain adequate healthcare during retirement.

33. Many Class Members may not have planned or saved adequately to pay for retirement healthcare benefits, because they relied upon Defendant Caterpillar's promise to pay them lifetime benefits.

34. Many Class Members may be left without retirement healthcare benefits if premiums continue to increase and they are required to pay additional out-of-pocket sums to maintain retirement healthcare coverage.

35. Caterpillar, in unilaterally charging for retiree healthcare benefits negotiated and bargained for in 1979 and 1988, breached its obligations to provide lifetime health insurance no cost to Plaintiff and the class members who retired on or after January 1, 1992 and before March 1998 the date UAW and Caterpillar entered a new collective bargaining agreement.

36. Plaintiff's health insurance benefits were vested and could not be unilaterally taken away.

37. In addition, the Plaintiff, and class members, are entitled to lifetime retirement benefits under the 1988 Summary Plan Description under which they retired.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action pursuant to Rule 23(b)(2), and (b)(1) and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and other persons similarly situated. Plaintiff seeks to represent a Class consisting of all persons:

a. who are or were participants or beneficiaries in Caterpillar's Plan that provided for retiree insurance benefits; and

b. for whom the UAW had been the employees' collective bargaining representative at the time of their retirement from Caterpillar, Inc.; and

c. (i) who began working for Caterpillar prior to the expiration of the 1988 labor agreement and who retired on or after January 1, 1992 and before March, 1998 and became eligible for the immediate commencement of a monthly pension (with at least 5 years of credited service) under the Non-Contributory Pension Plan upon retirement; and (ii) in the case of beneficiaries of such retirees, who is a surviving participant spouse whose employee spouse fulfilled the conditions above leaving a spouse with a survivor pension.

39. The court should also certify a subclass of all persons:

a. who were eligible to retire and receive an immediate commencement of a monthly pension (with at least 5 years of credited service) under the Caterpillar Non-Contributory Pension Plan prior to January 1, 1992, but who continued working and retired on or after January 1, 1992 and before March, 1998; and

b. in the case of beneficiaries of such retirees, who is a surviving participate spouse whose employee spouse fulfilled the conditions above leaving a spouse with a survivor pension.

40. Joinder of numerous geographically dispersed members of the class and subclass, numbering in the thousands, would be impractical.

41. This case depends on the resolution of common questions of fact and law affecting all members of the class and subclass.

42. The common questions include: (1) whether the reductions in retiree medical benefits are actionable under Section 301 of the LMRA, 29 U.S.C. § 185(a), on the ground that the class members' retiree medical benefits were covered by labor agreements between Caterpillar and the UAW, and that Defendant Caterpillar breached obligations under these agreements; and (2) whether the reductions in retiree medical benefits are actionable under Sections 502(a)(1)(B) and (a)(3) of ERISA, 29 U.S.C. §§ 1132 (a)(1)(B) and (a)(3), since the labor agreements and Summary Plan descriptions are governing Plan documents, the terms of which Caterpillar has violated.

43. Plaintiff's claims are typical of those of the members of the class and subclasses he seeks to represent, in that: (1) their claims relate to the same employment benefit plans as do the claims of the other class members, and relate to successive labor agreements and Summary Plan Descriptions containing substantially identical provisions; and (2) Caterpillar's conduct that plaintiffs challenge is the same conduct that had adversely affected the other class and subclass members.

44. Plaintiff will fairly and adequately represent the interests of the class and subclasses because his claims are the same as those members of the class and subclasses, and because he has secured the representation of attorneys who are skilled and knowledgeable in pursuing litigation of this kind.

45. This action is maintainable as a class action under Rule 23(b)(2), since the unlawful actions of Caterpillar, as alleged herein, have been taken on grounds equally applicable

to all members of the class and subclasses, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class and subclasses as a whole.

46. Alternatively, this action is maintainable as a class action under Rule 23(b)(1), as the prosecution of separate actions by or against individual members of the class and subclasses would create a risk of (a) inconsistent or varying adjudications with respect to individual members of the class and subclasses, which would establish incompatible standards of conduct for the party opposing the class; or (b) adjudications with respect to individual members of the class and subclasses, which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

47. Alternatively, this action is maintainable as a class action under Rule 23(b)(3), as common questions of law and fact described above predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### On Behalf of the Entire Class
(Violations of Labor Agreements, Actionable Under Section 301 of the LMRA)

48. All preceding paragraphs of this Complaint are re-alleged and incorporated herein by reference.

49. Count I is brought against Defendant by the Plaintiff in his individual capacity and on behalf of the entire Class.

50. As noted, in the years before their retirements and at the time they retired, Plaintiff and the class and subclass members were the subject of labor agreements between Caterpillar and the UAW. Under those agreements, Plaintiff's and the class and subclass

member's rights to healthcare benefits were vested, and subsequent reductions in benefits made by Caterpillar infringed upon those vested rights.

51. Accordingly, the reductions violate collectively bargained obligations owed to Plaintiff and the class members and their eligible spouses and dependents, and are actionable under Section 301 of the LMRA, 29 U.S.C. § 185(a).

## COUNT II
### On Behalf of the Subclass of Class Members Eligible to Retire Prior to January 1, 1992
(Violations of Labor Agreements, Actionable Under Section 301 of LMRA)

52. All preceding paragraphs of this Complaint are re-alleged and incorporated herein by reference.

53. Count II is brought against Defendant by the Plaintiff in his individual capacity and on behalf of the Sub-Class of all persons eligible to retire prior to January 1, 1992.

54. Plaintiff and similarly situated class members were eligible to retire prior to January 1, 1992 (the date, according to Caterpillar, that employees who retired on or after January 1, 1992 would pay healthcare premium costs above Caterpillar's capped contributions through an automatic monthly pension deduction).

55. Even though Plaintiff and other class members were eligible to retire (prior to January 1, 1992), they continued working. They were not provided any advance notice to enable them to retire prior to the January 1, 1992 date, as Caterpillar made its announcement of the cut-off later in 1992, after the January 1 date had already expired.

56. In the years before their retirements and at the time he retired, Plaintiff, and similarly situated subclass members who were eligible to retire prior to January 1, 1992, were subject to labor agreements between Caterpillar and UAW. Under those agreements, plaintiffs' and the subclass members' rights to healthcare benefits were vested at the time they became

eligible to retire, rather than the time they actually retired. Subsequent reductions in retiree healthcare benefits made by Caterpillar infringed upon those vested rights.

57. Accordingly, Caterpillar's reductions in retiree healthcare violate collectively bargained obligations owed to Plaintiff and similarly situated subclass members and their eligible spouses and dependents, and are actionable under Section 1301 of the LMRA, 29 U.S.C. § 185(a).

## COUNT III
### On behalf of the Entire Class
**(Violations of Plan, Actionable Under Section 502 of ERISA)**

58. All preceding paragraphs of this Complaint are re-alleged and incorporated herein by reference.

59. Count III is brought against Defendant by the Plaintiff in his individual capacity and on behalf of the entire Class.

60. By taking the actions described above, Caterpillar violated the rights of the Plaintiff and the class members and subclass members under the Plan's governing documents. Specifically, under those governing documents, Plaintiff and the Class members' rights to retiree medical benefits were vested and could not be adversely affected by purported amendments and unilateral imposition of part of the cost of coverage on Plaintiff and the class members.

61. By acting in violation of the terms of the documents governing the Plan, Caterpillar has engaged in conduct actionable under Sections 502(a)(1)(B) and (a)(3) of ERISA 29 U.S.C. §§ 1132(a)(B) and (a)(3). Those statutory provisions state that a participant or beneficiary may bring a civil action "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and further to "enjoin any act or practice which violates or…to enforce…the terms of the plan."

62. Caterpillar's modification to the retiree healthcare benefits plan of the Plaintiff and the class is a breach of Caterpillar's obligations under the employee benefits plan documents.

### COUNT IV
### On behalf of Plaintiff and the Subclass of Those Eligible to Retire Prior to January 1, 1992
### (Violations of ERISA § 102: Failure to Provide an Adequate Summary Plan Description)

63. All preceding paragraphs of this Complaint are re-alleged and incorporated herein by reference.

64. Count IV is brought against Defendant by the Plaintiff in his individual capacity and on behalf of the Sub Class of all persons eligible to retire prior to January 1, 1992.

65. By taking the actions described above, Caterpillar violated the rights of Plaintiff and the class members when the Summary Plan Description failed to meet the minimum requirements of ERISA's § 102 under which the Summary Plan Description must specify "the plan's requirements respecting eligibility for participation and benefits; ...*circumstances which may result in disqualification ineligibility, or denial or loss of benefits...*" 29 U.S.C. § 1022(b) (emphasis added).

66. Caterpillar failed to provide any notice to the Plaintiff, and the subclass of those eligible to retire prior to January 1, 1992, that failure to retire before January 1, 1992 would result in their being charged for retiree medical benefits. Caterpillar's conduct in unilaterally adopting this change without notice to employees who were eligible to retire prior to the January 1, 1992 cut-off date, violated ERISA's § 102, and the implementing regulations of the Secretary of Labor which require that each Summary Plan description contain "a statement clearly identifying circumstances which may result in...loss, forfeiture, or suspension of any benefits that a participant might otherwise reasonably expect the plan to provide on the basis of the

[Summary Plan Description's] description of benefits." 29 C.F.R. § 2520.102-3(1). As Plaintiff, and similarly situated subclass members and the class members were all qualified to retire prior to January 1, 1992, notice was critical of any date, which could have rendered their vested benefits illusory.

67. Accordingly, Plaintiff, and similarly situated subclass members, are entitled to appropriate equitable relief under ERISA § 502(a)(1)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests TRIAL BY JURY as well as the following relief:

(1) That the Court certify the action as an appropriate class action on behalf of the above class and subclasses and appoint Plaintiff as an adequate representative and the Plaintiff's attorneys as counsel for the class and subclasses;

(2) That the Court declare that Caterpillar, Inc. violated its obligations under the Plan and labor agreements under which the class members were to receive retiree medical benefits throughout retirement;

(3) That the Court enjoin Caterpillar, Inc. to perform its contractual and statutory obligations under the Plan and labor agreements, and under ERISA and LMRA § 301, and in particular order Caterpillar, Inc. to reinstate full coverage for the class members, prohibit Caterpillar from reducing coverage in the future, and reinstate class members and subclass members who stopped participating in the plan after Caterpillar began charging for benefits:

(4) That the Court award benefits, restitution and under § 301 monetary damages to restore all affected class members to the position in which they would have been but for Caterpillar's contractual and statutory violations; and

(5) That the Court award Plaintiff and Plaintiff's attorneys reasonable counsel fees, costs, and expenses of the action and any other relief the Court deems appropriate.

Dated: August 18, 2006.

Respectfully Submitted,

HARWELL HOWARD HYNE
GABBERT & MANNER, P.C.

By: *Alexandra Coulter Cross*
Craig V. Gabbert, Jr.
Alexandra Coulter Cross
315 Deaderick Street, Suite 1800
Nashville, Tennessee 37238
Telephone: 615-256-0500
Facsimile: 615-251-1059
Email: cvg or acc@h3gm.com

Of Counsel:

Robert M. Foote
Foote, Meyers, Mielke & Flowers, LLC
416 S. Second St.
Geneva, Illinois 60134
Telephone: 630-232-6333

Kathleen C. Chavez
Chavez Law Firm, P.C.
416 S. Second St.
Geneva, Illinois 60134
Telephone: 630-232-4480

*Attorneys for Plaintiff Michael Joseph Finn*